Filed 1/31/25  Harrison v. Lavi CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BRYAN HARRISON, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> SIMON LAVI, M.D. ET AL. <br><br>     Defendants and <br>     Appellants. | B328023 <br><br> (Los Angeles County <br>  Super. Ct. No. 22STCV33234) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard L. Fruin, Judge.  Affirmed.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner, Andrea K. Williams, for Defendants and Appellants.

Gavrilov & Brooks, Michael Coleman, Matthew R. Richard, for Plaintiff and Respondent.

Plaintiff Bryan Harrison (Harrison), an attorney, represented a patient of defendants Simon Lavi, D.O. (Lavi) and Simon Lavi, D.O., Inc. (collectively, defendants) in a personal injury lawsuit. Lavi allegedly made unflattering statements about Harrison on two occasions: (1) when Lavi declined to appear for a scheduled deposition and (2) during a medical appointment with Harrison's client. Displeased, Harrison sued Lavi. Defendants appeal from the denial of their special motion to strike Harrison's complaint under Code of Civil Procedure section 425.16 (the anti-SLAPP statute[1]). Defendants argue that Lavi's statements are protected under section 425.16, subdivision (e)(2), because they were made in connection with the pending personal injury litigation, or under subdivision (e)(4), as protected speech in connection with an issue of public interest. We conclude the alleged defamatory statements do not fall within the scope of section 425.16. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.  Harrison's Complaint**

Harrison filed this action against defendants for slander per se, false light, intentional infliction of emotional distress, negligent infliction of emotional distress, and intentional interference with contractual relations. Harrison is an attorney who was hired by non-party O.R.[2] to represent him in a personal

---

[1]  SLAPP is the acronym for a strategic lawsuit against public participation. All further undesignated statutory references are to the Code of Civil Procedure.

[2]  We granted the parties' applications to file their briefs and appendix of exhibits under seal. To protect the identity of Lavi's non-party patient, O.R., we shall refer to him by his initials.

injury action involving a car accident.  O.R. received treatment from several doctors, including Lavi, for injuries O.R. suffered in the car accident.

Harrison planned for Lavi to be a non-retained expert witness in O.R.'s personal injury lawsuit.  According to Harrison, Lavi agreed to appear for a remote deposition in early December 2021.  However, Harrison alleges that on the day of the deposition, Lavi refused to take part and "appeared for the sole purpose of stating that he would not appear in the deposition[ ] because he did not receive his payment to act as a non-retained expert witness."  Harrison claims he mailed the payment to Lavi in advance of the deposition and never heard that Lavi failed to receive it.  When Lavi appeared, he stated, "[I]t is well known [Harrison] is 'not trustworthy.'"  Lavi made this statement in the presence of a videographer for the deposition, court reporter, technical assistant, and Harrison's legal assistant.

Approximately two weeks later, O.R. had a medical appointment with Lavi.  Harrison alleges that while the purpose of the appointment was to "evaluate [O.R.'s] physical condition and determine whether he would need a spinal fusion, Dr. Lavi took this opportunity to speak with [O.R.], outside of [Harrison's] presence, and say false and damaging statements about [Harrison's] character and professional conduct."  A translator was present during the appointment.

Lavi allegedly made the following statements during the doctor's appointment: "'Do you still have the same attorney? . . . Your attorney's a fucking piece of shit.  You know what that means? . . .  And you can tell your attorney that I said that.  He is single-handedly ruining your case.  He is dishonest and not trustworthy.  I could have helped you out at the very beginning

3

on your case . . . , but your attorney is a piece of shit. He is hindering your case, ok, and fighting with us when I'm on your team.'" Lavi allegedly further stated: "'I would have fired his ass long ago if I were you. If it wasn't for your attorney, you wouldn't be here today. I'm trying to help you because I feel bad. But he's a piece of garbage of a human being. Fuck him!' [¶] 'You know? I'll tell you something. He's lucky I haven't turned him into the Bar. I can file a complaint against his license. And I was this close to going to court, and filing a complaint on him. They would've reprimanded him.'" Dr. Lavi continued, "'I've been trying to help you, but the problem is your attorney. He thinks he's hot shit; he doesn't know anything. Your attorney is brand new. This is the second case he's ever handled.'"

When O.R. asked Lavi why he was saying this, Lavi allegedly responded, "[Harrison] 'doesn't know what he's doing' and 'is inexperienced' . . . . 'He has zero experience. He doesn't know the case; he doesn't know how to handle cases; he doesn't know how to handle doctors; he doesn't know how to handle situations.'" Harrison believes Lavi made these statements to "damage [Harrison's] reputation as an attorney" and to persuade O.R. to fire Harrison and hire a different attorney with whom Lavi had been working.

Harrison alleges he was concerned that if he examined Lavi during the personal injury action, Lavi would be uncooperative and hostile towards him. As a result, Harrison asked another attorney to interact with Lavi and agreed to give the other attorney 50 percent of the contingency fee from the case. O.R.'s case settled for $1.775 million. Harrison alleges that but for Lavi's conduct, he would not have had to give half of his earnings to the other attorney. Harrison claims that Lavi's statement that

Harrison is "not trustworthy" and the statements during the medical appointment were "false and malicious" and a substantial factor in causing him harm.

## B.     Defendants' Anti-SLAPP Motion

Defendants filed a motion to strike Harrison's claims pursuant to section 425.16.  Defendants argued Lavi's alleged statements were protected under the anti-SLAPP statute because they were made in connection with O.R.'s personal injury litigation and were conduct in connection with an issue of public interest.  Additionally, defendants argued Harrison's claims lacked minimal merit.  Harrison opposed the motion.

After a hearing, the trial court denied defendants' motion. The court concluded Lavi's statements were not protected under the anti-SLAPP statute.  Defendants timely appealed.

## DISCUSSION

## A.     Section 425.16 and Standard of Review

The "anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.)  "A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail."  (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

5

Anti-SLAPP motions are evaluated through a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) We review the trial court's decision to deny an anti-SLAPP motion de novo. (*Monster Energy Co. v. Schechter*, *supra*, 7 Cal.5th at p. 788.)

## B. Prong One: The Claims Do Not Arise from Protected Activity

### 1. *Lavi's Statements Were Not Made in Connection with an Issue Under Consideration or Review by a Judicial Body*

Defendants first argue that Lavi's statements are protected speech under section 425.16, subdivision (e)(2) because they were generally made in connection with O.R.'s personal injury litigation. We disagree that the statements constituted protected activity.

Section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body." (§ 425.16(e)(2).) "[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute." (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.) "However, protection is not accorded to statements 'having any connection, however remote, with an official proceeding.'" (*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1096 (*Bassi*), quoting *Paul v. Friedman* (2002) 95 Cal.App.4th 853, 866 (*Paul*).) "Rather,

6

'[t]he statements or writings in question must occur in connection with "an issue under consideration or review" in the proceeding.'" (*Bassi*, at p. 1096.)  A statement or writing is "made 'in connection with'" litigation under section 425.16, subdivision (e)(2) "if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 (*Neville*), fn. omitted; *Bassi*, at p. 1096.)

Although the litigation privilege[3] "is not substantively the same as the anti-SLAPP protection, it may be viewed as an aid at the first step in the anti-SLAPP analysis when deciding 'whether a given communication falls within the ambit of subdivisions (e)(1) and (2)' of section 425.16." (*Bassi*, *supra*, 101 Cal.App.5th at p. 1097, fn. 9.)  "'To be protected by the litigation privilege, a communication must be "in furtherance of the objects of the litigation."'" (*Id.* at p. 1097.)  "Put differently, the statement must "'be connected with, or have some logical relation to, the action, i.e., . . . not be extraneous to the action.'"" (*Ibid.*)

Defendants argue Lavi's statement that Harrison is "not trustworthy," made before his deposition was supposed to begin, is protected activity because it was made in connection with O.R.'s pending personal injury lawsuit.  Defendants assert section 425.16, subdivision (e)(2) "covers 'any' statement made before or in connection with a judicial proceeding."  This is incorrect.  To be protected under subdivision (e)(2), the statement "in question must occur in connection with 'an issue under consideration or review'" in a judicial proceeding.  (*Paul*, *supra*,

---

[3]    The litigation privilege applies to a "publication or broadcast" made in any legislative, judicial, or other proceeding authorized by law.  (Civ. Code, § 47, subd. (b).)

95 Cal.App.4th at p. 866.) This means Lavi's statement must relate to the substantive issues in O.R.'s personal injury litigation concerning the car accident. (*Neville*, *supra*, 160 Cal.App.4th at p. 1266; *Bassi*, *supra*, 101 Cal.App.5th at p. 1096.) Defendants provide no explanation as to how the statement that Harrison is not trustworthy relates to the substantive issues in O.R.'s case. Lavi stated that if he made the statement, it was in reference to Harrison's alleged failure to make the payment for Lavi's deposition. But the payment of Lavi's fees for testifying was peripheral to the merits of the personal injury litigation. (*Bassi*, at p. 1098.) Lavi's statement did not further any discernible object of the litigation and was extraneous to the action.[4] (*Id.* at pp. 1097–1098.)

Likewise, defendants argue statements Lavi made about Harrison during O.R.'s medical appointment are protected activity because the appointment directly related to O.R.'s personal injury action. In support of this argument, defendants assert the appointment was arranged by a litigation funding company to discuss additional treatment for O.R.'s injuries.[5]

---

[4] To the extent that defendants argue that Lavi was required to explain why he was refusing to testify, defendants do not dispute that Lavi voluntarily chose to appear for his deposition. He was not subpoenaed. Defendants cite no authority holding that Lavi was required to explain his refusal to testify at his deposition.

[5] Harrison argues that defendants forfeited any argument concerning the medical appointment being set up by a litigation funding company by not raising this argument in the trial court. Defendants, in reply, contend they did not forfeit the argument because they argued in the trial court that the appointment was a "litigation-related medical consultation." Because we reject defendants' claims on the merits, we need not decide whether defendants forfeited the argument.

8

However, defendants fail to explain how these statements indicating that Harrison was "ruining" or "hindering" O.R.'s case because he was an inexperienced "piece of garbage of a human being" related to the substantive issues the personal injury case presented. While the statements questioned Harrison's character and ability to represent O.R. well, they did not address the underlying issues in O.R's case. Lavi's statements were outside the scope of any issues under consideration or review in the case. (See *Paul*, *supra*, 95 Cal.App.4th at p. 867 [conduct unrelated to an issue under consideration in a proceeding was not protected activity].)

The circumstances of this case are akin to those in *Paul*. In *Paul*, an attorney moved to strike causes of action asserted by a securities broker. The broker alleged that the attorney, in litigating a prior arbitration proceeding, had conducted an intrusive investigation into the securities broker's personal life. In the course of the investigation, the attorney allegedly disclosed to the broker's clients and others personal details that had no bearing on the alleged securities fraud at issue in the arbitration. (*Paul*, *supra*, 95 Cal.App.4th at pp. 857–858.) The attorney argued that his conduct was protected because it was undertaken "'in connection with the investigation or prosecution of the underlying arbitration.'" (*Id*. at p. 865.) The court of appeal held that the attorney failed to satisfy his threshold burden of showing the activity was protected. (*Id*. at p. 868.) The attorney's investigation and disclosures concerning the security broker's personal affairs were unrelated to any issue under consideration in the arbitration. (*Id*. at p. 867.)

As in *Paul*, Lavi's statements were not made sufficiently "'in connection with' an official proceeding." (*Paul*, *supra*, 95

9

Cal.App.4th at p. 867.) It is not enough for defendants to "generally aver a connection between" Lavi's statements about Harrison and O.R.'s personal injury action. (*Bassi, supra,* 101 Cal.App.5th at p. 1100.) "'The statements or writings in question must occur in connection with "an issue under consideration or review" in the proceeding.'" (*Neville, supra,* 160 Cal.App.4th at p. 1264.)

Additionally, relying primarily on *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482 (*Taheri*), defendants contend Lavi's statements to O.R. during the medical appointment are protected because they pertained to O.R.'s choice of counsel and were allegedly made to persuade O.R. to fire Harrison. In *Taheri*, a law firm sued another attorney, Neil C. Evans (Evans), for improperly soliciting its client, Alexander Sorokurs (Sorokurs), during pending litigation. (*Id.* at p. 485.) The law firm alleged: "Evans knew of the economic relationship between [the law firm] and Sorokurs, and induced Sorokurs to terminate his relationship with [the law firm], promising 'unobtainable and ethically improper litigation objectives. . . .'" (*Id.* at pp. 485–486.) Evans's promise was that he would be able to enforce a settlement agreement to which Sorokurs was a party. (*Id.* at p. 486.) Evans then fulfilled that promise by filing a motion to enforce the settlement agreement. (*Id.* at p. 486.)

Evans filed an anti-SLAPP motion, arguing that his actions were protected because they "'all took place in connection with pending litigation in which [the law firm's] interests were allegedly interfered with by [Evans] by [his] filings, letters, and other communicative actions in pending litigation.'" (*Taheri, supra,* 160 Cal.App.4th at p. 486.) Further, Evans submitted a declaration from Sorokurs stating Sorokurs contacted Evans

10

directly about pending lawsuits against Sorokurs and Evans did not solicit him. (*Ibid.*) *Taheri* held that the law firm's action arose from protected activity. (*Id.* at p. 489.) The complaint "plainly show[ed] it arose from Evans's communications with Sorokurs about pending litigation, and from Evans's conduct in enforcing the settlement agreement on Sorokurs's behalf." (*Ibid.*)

Unlike *Taheri*, this case does not concern a client seeking out and communicating with a second attorney about pending litigation. Moreover, the conduct in *Taheri* included a motion filed by Evans on Sorokurs's behalf, which constituted an act in furtherance of the right of petition in the pending litigation. In contrast, Lavi's statements criticizing and insulting Harrison were not an act in furtherance of the right of petition.

In short, defendants do not demonstrate Lavi's statements constitute protected activity under subdivision (e)(2) of section 425.16.

2. *Lavi's Statements Were Not Made in Connection with a Public Issue or an Issue of Public Interest*

Defendants next argue that Lavi's statement that Harrison is not trustworthy, made before his deposition, is protected under section 425.16, subdivision (e)(4), as a "matter of public interest because it relates to Harrison's competence as a professional." Without substantive analysis, defendants claim Lavi's statements to O.R. during the medical appointment also relate to issues of public concern. We are not persuaded.

Subdivision (e)(4) of section 425.16 protects "any . . . conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." "[A] court must

11

consider the context as well the content of a statement in determining whether that statement furthers the exercise of constitutional speech rights in connection with a matter of public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*).)

The inquiry under section 425.16, subdivision (e)(4) calls for a two-part analysis. "First, we ask what 'public issue or [ ] issue of public interest' the speech in question implicates–a question we answer by looking to the content of the speech. (§ 425.16, subd. (e)(4).) Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." (*FilmOn*, *supra*, 7 Cal.5th at pp. 149–150.) In assessing context, courts consider whether (1) the subject of the speech or activity "'was a person or entity in the public eye'" or "'could affect large numbers of people beyond the direct participants,'" (2) the activity "'occur[red] in the context of an ongoing controversy, dispute or discussion,'" or (3) the speech "'affected a community in a manner similar to that of a governmental entity.'" (*Id.* at pp. 145–146.)

"[V]irtually always, defendants succeed in drawing a line–however tenuous–connecting their speech to an abstract issue of public interest." (*FilmOn*, *supra*, 7 Cal.5th at p. 150.) However, subdivision (e)(4) "demands 'some degree of closeness' between the challenged statements and the asserted public interest." (*Ibid.*) Accordingly, "'it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.'" (*Ibid.*)

In this case, defendants fail to show Lavi's statements indicating Harrison is "a piece of garbage of a human being" who

12

was "single-handedly ruining" O.R.'s case are connected to a public issue or issue of public interest. There is no allegation that Harrison "was a person or entity in the public eye." (*FilmOn*, *supra*, 7 Cal.5th at p. 145.) There is no showing that the subject of Lavi's statements "could affect large numbers of people." (*Ibid.*) Indeed, Lavi's statements about Harrison were made in private to a small, specific audience: those who appeared for the deposition, O.R., and O.R.'s translator. (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 736 ["a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest"].) Defendants do not allege there was an ongoing controversy, dispute, or debate among the public as to Harrison's character or abilities. There is no allegation that the speech "affected a community in a manner similar to that of a governmental entity." (*FilmOn*, at pp. 145–146.)

In sum, Lavi's statements did not contribute to the public discourse on a matter of public interest concerning attorney trust and competence. (See *FilmOn*, *supra*, 7 Cal.5th at p. 150.) The statements were "too tenuously tethered" to such issues of public interest and "too remotely connected to the public conversation about those issues, to merit protection under [subdivision (e)(4)]." (*Id.* at p. 140.)

Defendants cite *Yang v. Tenet Healthcare Inc.* (2020) 48 Cal.App.5th 939 (*Yang*) in asserting that professional competence is an issue of public interest. In *Yang*, a surgeon sued a hospital, its staff, and individual doctors for defamation based on statements made about her qualifications, competence, and medical ethics. (*Id.* at p. 943.) The surgeon alleged the statements were made to "her 'patients'" and "'members of the general public,'" among others. (*Ibid.*) *Yang* held that whether a

13

physician was deficient in characteristics such as "'performing surgeries she was not privileged to perform,' 'was potentially incompetent' to perform certain surgeries, and 'intentionally trying to deceive the insurance providers and the hospital,' among other actions," was a public issue. (*Ibid.*)

The surgeon's allegations that the defendants informed her patients and the general public that she was generally unqualified demonstrated that the defendants directly contributed to the public issue. (*Yang, supra,* 48 Cal.App.5th at p. 948.) This was because the defendant hospital's directive that doctors should no longer refer patients to the surgeon was similar to a statement made to aid and protect consumers. (*Ibid.*) Moreover, "the defamatory statements were communicated to the public, not just to discrete doctors or hospital staff members." (*Ibid.*) "This context is significant, because speech to the public about a doctor's qualifications furthers the public discourse on that matter." (*Ibid.*)

*Yang* is distinguishable. Here, Lavi made the alleged defamatory statements to a few, discrete individuals present for the deposition and to O.R. and O.R.'s translator during a medical appointment. The statements were not communicated to the public in such a manner as would have furthered the public discourse on a public issue concerning attorney competence or trust. Thus, the context in which Lavi made the statements vastly differed from the context in *Yang*.

Because defendants have not satisfied prong one of the anti-SLAPP analysis, we need not determine whether Harrison established a likelihood of prevailing under the second prong. (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 43–44.) Defendants remain free to challenge Harrison's claims "on other

14

grounds and through other procedural means"; we express no view on their merits. (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1288.)

## DISPOSITION

The order is affirmed. Plaintiff Harrison is awarded costs on appeal.

MORI, J.

We concur:

CURREY, P. J.

ZUKIN, J.

15